**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

EDDIE L. SWINSON,

                 Plaintiff,

vs.                                     Case No. 3:08-cv-331-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Eddie L. Swinson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits, benefits for a period of disability, and supplemental social security income. His alleged inability to work is based on physical impairments involving his neck, right shoulder, and right arm. See Transcript of Administrative Proceedings ("Tr.") at 139; Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 10; "Pl.'s Mem.") at 8-11. On April 23, 2002, Plaintiff applied for disability insurance benefits and supplemental security income, alleging an onset date of October 30, 2000. Tr. at 128-30, 287-89. After holding a hearing on April 7, 2004, the Administrative Law Judge ("ALJ") issued a decision on September 21, 2004, finding Plaintiff not disabled through the date of that decision. Tr. at 15-26. On August

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 12), and the Order of Reference was entered on June 11, 2008 (Doc. No. 15).

30, 2005, the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On November 2, 2005, Plaintiff commenced an action in this Court under 42 U.S.C. § 405(g). See Complaint (Doc. No. 1) in Case No. 3:05-cv-1133-J-32MCR. On October 11, 2006, the Honorable Monte C. Richardson, United States Magistrate Judge, recommended remanding the case to the Commissioner for further proceedings. Tr. at 344-58. On November 27, 2006, the Honorable Timothy J. Corrigan, United States District Judge, entered an Order adopting Judge Richardson's Report & Recommendation. Tr. at 341-42. On November 28, 2009, Judgment was entered remanding the case to the Commissioner for further proceedings, and Case No. 3:05-cv-1133-J-32MCR was closed. See Order (Doc. No. 23) and Judgment (Doc. No. 24) in Case No. 3:05-cv-1133-J-32MCR.

On remand, the ALJ conducted further proceedings. On October 2, 2007, the ALJ held a hearing, but Plaintiff failed to appear. Tr. at 424. The hearing was continued to November 14, 2007, at which time Plaintiff testified, and the hearing was concluded. Tr. at 408-21. On January 3, 2008, the Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled through the date of the decision. Tr. at 293-304. On April 1, 2008, Plaintiff commenced this action by timely filing the Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and this case is properly before the Court. At the request of Plaintiff, oral argument was heard before the undersigned on September 2, 2009. See Minute Entry (Doc. No. 20).

Plaintiff now raises the same two issues that Judge Richardson previously addressed: (1) whether the ALJ failed to consider Plaintiff's subjective complaints of pain correctly; and

(2) whether the ALJ failed to provide sufficient reasons for rejecting the opinion of Orlando G. Florete, Jr., M.D. ("Dr. Florete"), one of Plaintiff's treating physicians. Pl.'s Mem at 11-16. After thoroughly reviewing the entire record, considering the parties' respective memoranda, and hearing oral argument, the undersigned finds the ALJ did not evaluate Plaintiff's subjective complaints of pain correctly, and the ALJ did not articulate sufficient reasons supported by substantial evidence for discounting Dr. Florete's opinion. Therefore, the case is due to be reversed and remanded for the Commissioner to conduct further proceedings.

## **II. The ALJ's Decisions**

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: 1) is currently employed; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). In the September 21, 2004 decision, the ALJ followed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff had not engaged in substantial gainful activity since October 30, 2000 (the alleged onset date). Tr. at 16. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "chronic pain syndrome, disc herniation, degenerative joint disease, and muscle spasiticity of the right shoulder." Tr. at 19. At step three, the ALJ stated Plaintiff did not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 19. The ALJ

determined Plaintiff had the residual functional capacity ("RFC") to perform light work with limitations: Plaintiff could lift and carry no more than twenty pounds occasionally, and he could lift and carry up to ten pounds frequently; he could sit, stand, and walk for a normal eight-hour workday; he could not climb ropes, ladders, or scaffolds; he could only occasionally perform reaching functions with his right arm; and he had to avoid unusual workplace hazards. Tr. at 19. At step four, the ALJ observed that Plaintiff is capable of performing his past relevant work as a "merchant patroller," and at step five the ALJ stated that there were also other jobs in significant numbers in the national economy that Plaintiff could perform. Tr. at 23. The ALJ concluded Plaintiff was not under a disability[2] from October 30, 2000 (the alleged onset date) through the date of the decision. Tr. at 25. Plaintiff appealed the ALJ's September 21, 2004 decision.

On appeal, Judge Richardson addressed two issues: (1) whether "the ALJ erred by failing to properly evaluate Plaintiff's credibility"; and (2) whether "the ALJ erred in failing to provide sufficient reasons why he rejected the opinion of Plaintiff's treating physician, Dr. Florete, regarding Plaintiff's ability to work." Tr. at 351. Judge Richardson concluded the ALJ had not applied the Eleventh Circuit's pain standard properly, and the ALJ did not provide sufficient reasons for rejecting the opinion of Dr. Florete. The Court adopted Judge Richardson's recommendation that the case be remanded to the Commissioner for further evaluation of the evidence with respect to Plaintiff's complaints of pain, as well as reconsideration of Dr. Florete's opinion. Tr. at 342.

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

-4-

After conducting further proceedings, the ALJ again found Plaintiff not disabled. Tr. at 293-304. In the January 3, 2008 decision, the ALJ again followed the required five-step sequential inquiry set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Tr. at 293-304. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 30, 2000 (the alleged onset date).[3] Tr. at 295. However, the ALJ pointed out that in 2005 Plaintiff worked as a janitor at McDonald's for three months, and he worked as an equipment driver at Armstrong[4] for five or six months; in 2006, Plaintiff worked at Georgia Pacific as a machine operator for seven months and twenty-three days. Tr. at 295, 411-18. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative joint disease of the right shoulder, hypertension." Tr. at 295. At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 300.

The ALJ determined Plaintiff has the RFC to perform a substantial range of light work: Plaintiff can occasionally lift and carry twenty pounds, and he can frequently lift and carry up to ten pounds; he can sit for up to six hours, and he can stand and walk for up to six hours in an eight-hour workday with normal breaks; he can perform push/pull functions with both

---

[3] The ALJ's finding in this regard is somewhat confusing. Although the ALJ made the finding in one paragraph that Plaintiff has not engaged in substantial gainful since the alleged onset date, the ALJ suggested in the next paragraph that Plaintiff has engaged in substantial gainful activity since the alleged onset date. Tr. at 295 (referring to Plaintiff's "post alleged onset date substantial gainful activity"). Despite the contradictory language, it appears the ALJ actually found Plaintiff has not engaged in substantial gainful since the alleged onset date. Tr. at 295.

[4] The nature of Armstrong's business was not developed at the November 14, 2007 hearing. Tr. at 413.

lower extremities and his left[5] upper extremity, but he cannot perform "push/pull functions" with his right upper extremity; he can climb stairs and ramps, but not climb ropes, ladders, or scaffolds; he can balance, stoop, kneel, crouch, or crawl; he can occasionally perform reaching functions with his right arm; and he should avoid unusual workplace hazards. Tr. at 300. At step four, based on the testimony of the vocational expert from the previous hearing, the ALJ found Plaintiff is unable to perform any past relevant work, although the ALJ also stated that Plaintiff retains the capacity to perform his past work as a "merchant patroller."[6] Tr. at 302. At step five, again based on the testimony of the vocational expert from the previous hearing, the ALJ determined there are other jobs in significant numbers in the national economy that Plaintiff can perform. Tr. at 302. The ALJ concluded Plaintiff was not under a disability from October 30, 2000 (the alleged onset date) through the date of the decision. Tr. at 303.

## **III. Standard of Review**

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

---

[5] It appears the ALJ inadvertently stated that Plaintiff could perform push/pull functions with his "right upper extremity"; however, the context makes it clear that the ALJ meant to say "left upper extremity." Tr. at 300.

[6] A "merchant patroller" is essentially a security guard at a retail store. Tr. at 461

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).

## IV. Discussion

### A. Plaintiff's Complaints of Pain

In the Report and Recommendation that was adopted by the Court, Judge Richardson concluded the ALJ had not applied the Eleventh Circuit's pain standard properly. Tr. at 352-56. Judge Richardson observed the ALJ had not made a specific finding as to whether Plaintiff's symptoms could reasonably have been expected to result from Plaintiff's medical condition. Tr. at 353. Judge Richardson determined the ALJ had not examined the factors for evaluating pain that are set forth in the Regulations. Tr. at 353-54 (citing 20 C.F.R. § 404.1529(c)(3)); see also 20 C.F.R. § 416.929(c)(3). The only reason provided by the ALJ for discrediting Plaintiff's pain testimony was that Plaintiff had not sought additional medical treatment for his pain for several months. Tr. at 354. Judge Richardson explained this

reason was insufficient because the failure to seek medical treatment alone–without determining whether there were good reasons why additional treatment had not been not sought–was an inadequate basis for discrediting Plaintiff's complaints of pain. Tr. at 354-56. "The ALJ did not follow-up and ask Plaintiff why he did not seek any further treatment or whether he had ever been informed about free medical care." Tr. at 356. Judge Richardson noted that Plaintiff had been taking numerous medications for pain, but they had not been effective. Tr. at 356.

On remand, the ALJ conducted further proceedings, but he did not question Plaintiff as to why additional medical treatment had not been sought. Tr. at 409-20. Instead, in the decision dated January 3, 2008, it appears the ALJ relied primarily on the fact Plaintiff had worked for eight or nine months in 2005 and almost eight months in 2006 to find that Plaintiff's subjective complaints of pain were not credible. Tr. at 301-02. In addition, the ALJ found that "the weight of the medical record clearly evidences that, although [Plaintiff] has degenerative joint disease of the right shoulder as a result of his AC joint separation, it also demonstrates that he has the capacity to perform work-related activities within the limitations of his [RFC]." Tr. at 302.

Plaintiff again contends the ALJ violated the pain standard of the United States Court of Appeals for the Eleventh Circuit because the ALJ did not consider all relevant factors, including Plaintiff's medication. Pl.'s Mem. at 11-14. "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined

-8-

medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the ALJ determines that the claimant has an objectively determined medical condition that could reasonably give rise to the pain alleged, then "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability."  Foote, 67 F.3d at 1561 (emphasis added); see also 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223; Foote, 67 F.3d at 1561.

Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits a claimant's subjective pain testimony.  Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). The Regulations provide that the following factors should be evaluated when considering a claimant's pain testimony:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate pain or other symptoms; and (7) other factors concerning the

claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished).

On remand, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms of degenerative joint disease and hypertension, but that [Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." Tr. at 301. The undersigned interprets this statement to mean that Plaintiff's objectively determined medical condition could have reasonably been expected to give rise to the pain Plaintiff alleged, but the ALJ found that Plaintiff's complaints of pain were not credible. As mentioned supra p. 8, the ALJ relied heavily on Plaintiff's work at McDonald's, Armstrong, and Georgia Pacific in discrediting Plaintiff's pain testimony. Tr. at 301. However, the ALJ explicitly found that Plaintiff had not engaged in substantial gainful activity since October 30, 2000.[7] Tr. at 295. Plaintiff's work history in 2005 and 2006 was one of the ALJ's main reasons for concluding Plaintiff was capable of full-time work. Tr. at 301. Yet, Plaintiff testified he was unable to maintain employment due to the effects of the pain he was experiencing. Tr. at 412-18. According to Plaintiff, he was late to work approximately three times per week because of pain when he was working at Georgia Pacific. Tr. at 415.

"Although the issue is not totally clear," the Eleventh Circuit has suggested that the ability to engage in substantial gainful activity may involve the ability to work on a "'regular and continuing basis,'" which means "8 hours a day, for 5 days a week." Kelley v. Apfel, 185 F.3d 1211, 1214-15 (11th Cir. 1999) (citing Social Security Ruling 96-8p, 1996 WL 374184).

---

[7] But see supra note 3.

In light of Plaintiff's testimony that his pain resulted in poor job performance, and that he was tardy for work three days per week because of his pain while he was working at Georgia Pacific, Tr. at 412-18, Plaintiff's ability to maintain full time employment was doubtful, making the probative value of Plaintiff's work history in 2005 and 2006 questionable. The ALJ's apparent finding that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, combined with Plaintiff's testimony that he could not maintain employment because of pain, require the ALJ to consider all factors relevant to the pain analysis and to clarify his determination that Plaintiff's pain was not disabling.

Additionally, Plaintiff's alleged ability to work after 2004 does not necessarily establish his ability to work before 2004. The ALJ found that Plaintiff had fewer severe impairments after 2004, although the ALJ also found Plaintiff's residual functional capacity in 2004 to be basically the same as it was in 2008. Tr. at 19, 295, 300. In the September 21, 2004 decision, the ALJ that found Plaintiff had four severe impairments: chronic pain syndrome, disc herniation, degenerative joint disease, and muscle spasiticity of the right shoulder. Tr. at 19. In the January 3, 2008 decision, the ALJ found that Plaintiff had two severe impairments: degenerative disc disease of the right shoulder and hypertension. Tr. at 295. If Plaintiff had fewer impairments in 2008 than he did in 2004, that could explain why he was able to work after 2004 but not before then. In other words, Plaintiff's alleged ability to work in 2005 and 2006 could be explained by the fact he had fewer severe impairments than he did in 2004. The ALJ's finding that Plaintiff had additional severe impairments prior to 2004 leaves open the possibility that those additional impairments resulted in an inability to work, which means there could have been a "period of disability" for which the ALJ did not account.

The ALJ did not explain why Plaintiff's chronic pain syndrome or muscle spasticity were no longer severe impairments in 2008. In such circumstances, the ALJ should have considered the other relevant factors, and additional explanation from the ALJ is required. On remand, the ALJ should evaluate each of Plaintiff's alleged impairments and explicitly evaluate whether each one is severe.

The ALJ also reviewed the medical evidence in deciding that Plaintiff's complaints of pain were not credible. Tr. at 302. The ALJ observed that on November 2, 2000, David Yarian, M.D. ("Dr. Yarian") merely directed Plaintiff not to use his right arm above the shoulder level (Tr. at 212); on November 21, 2000, Stefan Stanescu, M.D. ("Dr. Stanescu") simply noted that Plaintiff had been given a sling and was directed to limit the use of his right arm (Tr. at 186); on March 16, 2001, Ketki Modi ("Dr. Modi") referred Plaintiff for a vocational evaluation, which suggests Dr. Modi did not believe Plaintiff was completely disabled (Tr. at 263); on April 12, 2002, Perry Cole, M.D. ("Dr. Cole") stated that Plaintiff "need[ed] to have vocational rehabilitation so that he can be retrained in a field that would not require him to be as physically active as his previous laborious job required" (Tr. at 236). Tr. at 302. The ALJ also noted that on August 14, 2002, Dr. Cole opined that Plaintiff's sensation was intact; his right hand grip, flexion, and extension were three out of five; his dexterity was intact but slow; his right grip strength was three out of five; and his gait and station were normal. Tr. at 302 (referring to Tr. at 219).

Although it was appropriate for the ALJ to consider medical evidence and statements from physicians when evaluating Plaintiff's subjective complaints of pain, the Regulations direct that <u>all</u> of the available evidence be considered. See 20 C.F.R.

-12-

§§ 404.1529(c)(4), 416.929(c)(4). Many of the physicians' statements on which the ALJ relied were made more than a year before Dr. Florete's February 24, 2003 letter. Under the circumstances, the other factors identified supra p. 9 should have been evaluated. Although the ALJ did acknowledge the relevant factors, there is no indication that the ALJ actually considered them. Tr. at 300-01. For example, the ALJ did not explain how the type, dosage, effectiveness, and side effects of Plaintiff's medication affected the credibility determination. Tr. at 356; see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The medication Plaintiff had been prescribed included Darvocet, Vioxx, Baclofen, Klonopin, Wellbutrin, Elavil, Senokat, Nasacort, Lortab, Oxycontin, Duragesic patches, Roxicodone, epidural steroid injections, facet injections, Botox injections, and Methadone. Tr. at 202-03, 209, 229-30, 236-37, 243-44, 251, 272-73, 276-77, 372, 374, 386, 402. Although the ALJ mentioned some of these medications in his recitation of the facts, there is no indication in his decision that the ALJ was aware Plaintiff had been prescribed and had taken Methadone. Tr. at 296-97. Moreover, the ALJ did not state how or whether the medications were taken into account. Given the number of different medications Plaintiff had been prescribed, the length of time he had been prescribed them, and the frequency of his attempts to obtain pain medication, the ALJ should have explained how Plaintiff's medications factored into the pain analysis.

In addition, the ALJ did not ascertain whether there were any precipitating or aggravating factors. Nor did the ALJ consider the other measures Plaintiff was using to alleviate his pain. It is not clear from the record how these factors might have influenced the ALJ's determination, if at all. Therefore, to allow for meaningful judicial review, the ALJ

-13-

should have considered the other factors identified <u>supra</u> p. 9 or explained why he chose not to consider them.

For the reasons explained, the ALJ should have considered the pertinent factors previously identified by Judge Richardson. On remand, the ALJ should reevaluate Plaintiff's pain, taking into account Plaintiff's testimony and all other evidence with respect to the intensity, persistence, and limiting effects of the pain. The ALJ should explicitly consider all of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Further, the ALJ should reevaluate Plaintiff's alleged impairments and explicitly determine whether each one is a "severe impairment." To allow for meaningful judicial review, it is appropriate to remand this case for the ALJ to make the necessary factual findings in the first instance.

### B. Plaintiff's Treating Physician

Judge Richardson found the ALJ failed to provide sufficient reasons for rejecting the opinion of Dr. Florete, one of Plaintiff's treating physicians. Tr. at 357. In a February 24, 2003 letter addressed to a "Government Agency Social Worker," Dr. Florete certified that Plaintiff was unable to work in a full-time capacity because of chronic pain syndrome, disc herniation, and muscle spasticity. Tr. at 282. In his September 21, 2004 decision, the ALJ discounted Dr. Florete's February 24, 2003 opinion based on a perceived discrepancy with Dr. Florete's January 7, 2003 determination that Plaintiff suffered from a twenty-four percent full body impairment. Tr. at 20 (referring to Tr. at 274). Judge Richardson was "not certain as to how these specific opinions [were] contradictory and as such, [found] the ALJ did not clearly articulate his reasons for rejecting Dr. Florete's February 24, 2003 opinion." Tr. at

357. Judge Richardson directed the ALJ to provide further explanation of his reasons for discounting Dr. Florete's February 24, 2003 opinion. Tr. at 357.

On remand, the ALJ stated that the opinion expressed in Dr. Florete's February 23, 2004 letter was not credible because it was inconsistent with earlier treatment notes. Tr. at 298. Specifically, the ALJ observed that on January 2, 2003, Raphael Reyes, P.A. ("P.A. Reyes")[8] stated that the most recent MRI of Plaintiff's cervical spine, taken in October of 2002, was unremarkable, and that Dr. Florete concurred with that assessment. Tr. at 298 (referring to Tr. at 276-77). The ALJ explained that the unremarkable MRI was inconsistent with the opinion expressed in the February 24, 2003 letter, in which Dr. Florete stated that Plaintiff had disc herniation with degeneration and joint disease in the cervical spine. Tr. at 298 (referring to Tr. at 282). In addition, the ALJ observed that on January 7, 2003 Dr. Florete had found Plaintiff to be at "MMI" (maximum medical improvement). Tr. at 298 (referring to Tr. at 274). The ALJ further opined that Dr. Florete's February 24, 2003 opinion was not made in the ordinary course of treatment and "appears to be a statement solicited from a 'compliant' tort physician." Tr. at 298. Therefore, the ALJ discounted the opinion expressed in Dr. Florete's February 24, 2003 letter. Tr. at 301.

Plaintiff contends the ALJ again failed to provide sufficient reasons supported by substantial evidence for discounting Dr. Florete's February 24, 2003 opinion. Pl.'s Mem. at 14-15. The Social Security Administration has promulgated regulations instructing ALJs how

---

[8] In his decision, the ALJ refers to "P.A. Keyes." Tr. at 298. It is clear from the context that the ALJ was actually referring to P.A. Reyes.

to weigh the medical opinions[9] of treating physicians[10] properly.  See 20 C.F.R. §§ 404.1527(d), 416.927(d).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir.

---

[9] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment.  20 C.F.R. § 404.1527(a)(2).

[10] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required the for the medical condition.  See 20 C.F.R. § 404.1502.

2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

According to the ALJ, P.A. Reyes's January 2, 2003 observation that there had been a previous unremarkable MRI was inconsistent with Dr. Florete's February 24, 2003 opinion of disc herniation and degenerative joint disease. Tr. at 298. However, the opinion expressed in Dr. Florete's February 24, 2003 letter was also based on other objective medical evidence and well documented medical conditions that were not addressed by the ALJ. Tr. at 282, 298. For example, an MRI of the cervical spine performed on April 2, 2001 revealed that "[e]ach of the small central protrusions at the C4-C5 level was mass effect upon the thecal sac," and that there were "distal osteophyte complexes at C3-C4 and C5-C6 with impingement on the anterior thecal sac and no mass effect on the cord." Tr. at 257. In addition, Dr. Florete's February 24, 2003 opinion was based in part on Plaintiff's chronic pain syndrome and major muscle spasticity. Tr. at 282. Dr. Florete's statement with respect to Plaintiff's chronic pain syndrome and muscle spasticity is consistent with the treatment notes from the Institute of Pain Management, which indicated Plaintiff suffered from chronic neck pain and "intractable muscle spasticity" and myofascial pain syndrome. Tr. at 219, 229-32, 243, 253-57, 272, 276. It is unclear why the ALJ did not address Plaintiff's chronic pain syndrome or muscle spasticity, especially when the ALJ previously found them to be severe

impairments. Tr. at 19. In the January 2, 2008 decision, the ALJ did not explain why he no longer considered Plaintiff's chronic pain syndrome or muscle spasticity to be severe impairments, even though chronic neck pain was reported after 2004, Tr. at 373, 378-80, 385, and the treatment notes indicate "diffuse spasm" in Plaintiff's neck on at least one occasion after 2004, Tr. at 375.

Although Dr. Florete may have been more emphatic in the February 24, 2003 letter than he had been in his treatment notes, it cannot be said that the opinion in the letter was not based on the treatment Plaintiff had been receiving from the Institute of Pain Management for almost two years. Plaintiff received regular treatment from Dr. Florete, other physicians, and physicians' assistants at the Institute of Pain Management between March 2001 and March 2003. Tr. at 229-63. The ALJ mentioned that Dr. Florete's February 24, 2003 opinion was inconsistent with Plaintiff's subsequent work. However, as explained supra pp. 11-12, the ALJ found in his 2008 decision that Plaintiff had fewer severe impairments than he had in 2004, leaving open the possibility that there was a period of disability.

In addition, on remand the ALJ did not explain how or why Dr. Florete's February 24, 2003 opinion is inconsistent with Dr. Florete's January 7, 2003 determination that Plaintiff was at maximum medical improvement. Tr. at 274, 298. It is difficult to understand why a determination of maximum medical improvement would be inconsistent with a finding of disability. Moreover, the ALJ articulated no basis for describing Dr. Florete as a "compliant tort physician." Tr. at 298.

After thoroughly reviewing the entire record, the undersigned finds that the ALJ did not articulate adequate reasons supported by substantial evidence demonstrating good cause

for discounting Dr. Florete's February 24, 2003 opinion. Although one aspect of Dr. Florete's February 24, 2003 opinion could be viewed as inconsistent with the prior observation of an unremarkable MRI by Dr. Florete's assistant, Dr. Florete's opinion was also based on other objective medical evidence and medical problems that the ALJ did not address. On remand, the ALJ should consider all of the bases for Dr. Florete's opinion in the February 24, 2003 letter and determine whether they are supported by the evidence, or whether there is good cause to discount the opinion.

## V. Conclusion

The ALJ did not assess the credibility of Plaintiff's pain testimony under the correct standard. In addition, the ALJ did not articulate sufficient reasons supported by substantial evidence for discounting the opinion of Dr. Florete.

In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) as incorporated by 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

> (a) Reevaluate Plaintiff's subjective complaints of pain in light of all of the evidence of record, including Plaintiff's medication and daily activities, and explicitly consider all of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3);
>
> (b) Reevaluate all of Plaintiff's alleged impairments at step two and explicitly determine whether each is a severe impairment;

(c) Reconsider the February 24, 2003 opinion of Dr. Florete, taking into account all of the medical conditions on which that opinion was based; and

(d) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk of Court is directed to enter judgment accordingly and close the file.

3. If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b). See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 15, 2009.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

jdf
Copies to:
Counsel of Record